UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FELIX MOLINA,<br>　　Plaintiff, | :<br>:<br>: |
| v. | : 　3:13cv413 (WWE) |
| EAGLE LEASING COMPANY,<br>　　Defendant. | :<br>:<br>: |

### MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this action, plaintiff Felix Molina claims that Eagle Leasing Company is liable for discriminatory disparate treatment, hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.*, and the Connecticut Fair Employment Practices Act ("CFEPA"); and for negligent supervision.[1]

Defendant has moved for summary judgment. For the following reasons, defendant's motion for summary judgment will be granted in part and denied in part.

### BACKGROUND

The parties have submitted statements of fact with supporting exhibits that reveal the following factual background. The parties dispute most of the facts relevant to the claims in this case.

Plaintiff is a male of Hispanic heritage and speaks Spanish as his first language. In October 2010, plaintiff commenced work with defendant Eagle Leasing.

Eagle Leasing is a provider of truck trailers and ground level containers for short

---

[1] The Court has previously dismissed a claim of intentional infliction of emotional distress.

and long-term lease.  It also maintains a repair and maintenance shop at its headquarters.  Generally, Eagle Leasing employs a labor force which is more than 92% of Hispanic origin.

During plaintiff's employment with Eagle Leasing, two of the laborers were not of Hispanic origin.  The parties dispute the facts relevant to the treatment of Hispanic laborers and whether plaintiff and other laborers of Hispanic origin were directed to speak English only.  The parties also disagree on facts specific to plaintiff's last day of employment; his complaints about working conditions, harassment and retaliation; and requests for light duty.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).  If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving

party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Anderson, 477 U.S. at 249.

**Time Bar on Title VII Claims**

Defendant asserts that plaintiff's Title VII claims are untimely.

To preserve a claim under Title VII, an aggrieved employee must submit a charge of discrimination to the EEOC within 180 days of the allegedly unlawful incident, or within 300 days of the incident if the employee first presented the charge to a state or local equal opportunity agency.  See 42 U.S.C. § 2000e-5(e)(1).  Here, plaintiff filed his claims with the state agency, the Connecticut Commission on Human Rights and Opportunities on March 29, 2012.

Defendant asserts that plaintiff stopped working at Eagle Leasing on June 2, 2011, due to the occurrence of his work place injury that day. Thus, defendant maintains that plaintiff had until March 28, 2012 to file his administrative claim with the EEOC.

Plaintiff disputes that June 2, 2011 was his last day of work.  First, he contends that he returned to work on June 3, 2011, although he later brought himself to the hospital.  He also claims to have returned to work on June 7 or 8, 2011, when he provided defendant with medical documentation of his injury.  He maintains that he was instructed to return to work when he was medically cleared for work.  Plaintiff asserts that he attempted to return to work when he had obtained medical clearance on August 31, 2011, but that defendant informed him that it did not consider him to be an employee.

Disputed issues of fact preclude this Court from determining the date of the

3

plaintiff's termination. Accordingly, for purposes of ruling on this motion for summary judgment, the Court will assume that plaintiff's Title VII claims are timely filed.

**Disparate Treatment**

Plaintiff asserts that he was subjected to disparate treatment based on his Hispanic heritage in violation of Title VII and CFEPA.[2]

In a disparate treatment case based on circumstantial evidence, the Court analyzes plaintiff's claims of discrimination according to the burden shifting process established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-56 (1981).

Title VII prohibits discrimination based on race, gender, religion, national origin or ancestry. To establish his prima facie claim of gender or national origin discrimination in violation of Title VII, plaintiff must demonstrate that (1) he is a member of a protected class; (2) he was intentionally discriminated against on the basis of that protected class; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Dowrich-Weeks v. Cooper Square Realty, Inc., 2013 WL 4437071, *1 (2d Cir. 2013); Joseph v. North Shore Univ. Hosp., 473 Fed. Appx. 34, 37 (2d Cir. 2012). Although the plaintiff's initial burden is not onerous, he must show that the alleged adverse employment action was not made for legitimate reasons. Thomas v. St. Francis Hosp. & Med. Ctr., 990 F. Supp. 81, 86 (D. Conn. 1998).

---

[2]The Court will analyze the Title VII and CFEPA claims together since they are generally subject to the same standards. Adams v. Festival Fun Parks, 2013 WL 951710, *7 (D. Conn. 2013).

4


If the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, non-discriminatory business reason for the alleged discriminatory action. The plaintiff must then prove by a preponderance of the evidence that the supposed legitimate reason is actually a pretext for discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993).

In accordance with plaintiff's representations in his opposition papers, the Court assumes that plaintiff was terminated on August 31, 2011. Plaintiff maintains that he has set forth sufficient evidence to support his claim of constructive discharge. However, it is unclear whether plaintiff suffered an actual or constructive discharge.

"Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily." Brittell v. Dep't of Corr., 247 Conn. 148, 178 (1998). Plaintiff has proffered testimony relevant to his supervisor subjecting him to insults based on his heritage, instructing him to only speak English, and mistreatment of employees based on race or ethnicity. At the same time, it appears that plaintiff intended to return to work in August 2011, but that he was prevented from doing so when he learned that he was no longer considered an employee. Nevertheless, it is undisputed that plaintiff's employment with defendant has ceased. Construed most liberally in favor of plaintiff, the evidence indicates that plaintiff did not voluntarily quit working for defendant. Accordingly, the Court finds that plaintiff has met the third prong of the prima facie case that he suffered an adverse employment action.

The asserted discriminatory mistreatment that plaintiff and other Hispanics experienced during the work day, if proved true, may constitute a hostile work

environment.  However, the evidence adduced fails to suggest that his termination in August 2011 had any connection with a discriminatory animus.  Thus, the fourth prong, that he suffered his adverse employment action under circumstances giving rise to an inference of discrimination, is not satisfied.  Summary judgment will enter on this claim.

**Hostile Work Environment**

Plaintiff asserts that defendant subjected him to a hostile work environment in violation of Title VII and CFEPA.  Defendant maintains that plaintiff has failed to establish a hostile work environment claim.

To make out a hostile work environment claim, a plaintiff must present evidence (1) that the conduct in question was objectively severe or pervasive, that is, that it created an environment that a reasonable person would find hostile or abusive; (2) that the plaintiff subjectively perceived the environment as hostile or abusive; and (3) that the plaintiff was subject to the hostile work environment 'because of' his race or ethnicity.  Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007).  A court must assess the evidence supporting a hostile work environment claim collectively and evaluate factors such as (1) frequency of the discriminatory conduct, (2) the severity of the conduct, (3) whether it is physically threatening or merely an offensive utterance, and (4) whether it unreasonably interferes with an employee's work performance.  Harris v. Fork Lift Sys., Inc., 510 U.S. 17, 23 (1993).

Here, plaintiff has submitted testimony that he and other Hispanic workers were continually cursed at and subjected to degrading comments and mistreatment on the basis of being Hispanic.  Plaintiff also described how his supervisor threw out the lunches of Hispanic workers and how the supervisor would refer to the Hispanic

6

workers' lunches as "shit food." Construing the facts most favorably to plaintiff, the Court finds that plaintiff has raised an inference of a discriminatory hostile work environment. Summary judgment will not enter on this claim.

**Retaliation**

Plaintiff alleges that he suffered retaliation for making complaints. Defendant maintains that plaintiff did not make any complaints about discrimination that would be protected under the statute.

To state a prima facie case of retaliation under Title VII, the plaintiff must allege that: (1) he engaged in a protected activity; (2) the employer was aware of this activity; (3) the employer took adverse action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action. See Kessler v. Westchester Cnty. Dep't of Soc. Servs., 461 F.3d 199, 205–06 (2d Cir. 2006). Complaints concerning safety or general employment conditions are not protected activity under Title VII. Gonzales v. Eagle Leasing Co., 2015 WL 4886489, at * 6 (D. Conn. 2015). An adverse employment action is any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006). Proof of the causation element "can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000). Retaliation claims are also subject to the burden shifting paradigm applicable to disparate

treatment claims.  Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002).

Here, plaintiff asserts that he complained to his supervisor about discriminatory treatment and that he thereafter became the subject of insults and punitive work assignments such as picking up garbage in the freezing weather.  Plaintiff has also testified that Louis Eagle, defendant's owner, repeatedly refused to meet with him to discuss the discriminatory treatment.

Plaintiff has not established a causal connection between plaintiff's complaints of discrimination and his termination in August 2011.  Without information regarding the dates of plaintiff's asserted protected activity or more specific information about his termination, the Court cannot find that a causal connection exists.  However, plaintiff has indicated by his testimony that the insulting mistreatment and his demotion from paint shop to garbage detail followed closely after his complaints of discrimination. Summary judgment will be granted on the basis that plaintiff suffered retaliatory termination, but will be denied as to other adverse employment actions, including mistreatment and demotion.

**Negligent Supervision**

Plaintiff alleges that defendant is liable for the negligent supervision that resulted in a discriminatory, hostile and unsafe workplace.  Defendant argues that plaintiff cannot establish that plaintiff sustained a sufficient injury to recover on a negligent supervision claim.

To state a negligent supervision claim, a plaintiff must allege that he suffered an injury due to the defendant's failure to supervise an employee whom the defendant had a duty to supervise.  Abate v. Circuit-Wise, Inc., 130 F. Supp. 2d 341, 344 (D. Conn.

8

2001).  Plaintiff cannot sustain a claim for negligent supervision when the only alleged harm is an injury based on violation of Title VII or emotional injury.  See Deguzman v. Kramer, 2005 WL 2030447, at *2 (D. Conn.) (unlawful discrimination alone is insufficient to satisfy injury for negligent supervision);  Antonopoulos v. Zitnay, 360 F. Supp. 2d 420, 430-31 (D. Conn. 2005) (employee cannot bring negligence-based claim against employer for emotional distress occurring during ongoing employment relationship).

In support of his negligent supervision claim, plaintiff argues that he has suffered "discrimination, harassment and retaliation by the defendant" and that defendant "owes the plaintiff the duty not to discriminate against him."  Thus, even construed most liberally, plaintiff asserts either an injury arising out the asserted Title VII violations or an emotional injury.  The Court will enter summary judgment on the claim of negligent supervision.

## **CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment [Doc. # 50] is DENIED in part and GRANTED in part.  Summary judgment is GRANTED on the claims of discriminatory disparate treatment, retaliatory termination, and negligent supervision.  Summary judgment is DENIED on the claims for discriminatory hostile work environment and retaliation based on adverse employment action of mistreatment and demotion.

Dated this _22d___ day of September, 2015, at Bridgeport, Connecticut.


/s/Warren W. Eginton

WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE